Our argument next in case 24351, United States Postal Service v. Konan. Mr. Liu. Mr. Chief Justice, and may it please the Court. The postal exception to the Federal Tort Claims Act preserves the United States' immunity for any claim arising out of the loss, miscarriage, or negligent transmission of mail. Respondent alleges that her mail didn't reach its destination because postal employees intentionally withheld the mail and returned it to sender. That allegation falls within the postal exception for two reasons. First, Respondent alleges a miscarriage of mail. When Congress enacted the FTCA in 1946, miscarriage had a specific meaning in the mail context. It meant the failure of something sent to arrive or to be carried properly. Indeed, pre-FTCA decisions used miscarriage to describe the facts alleged here, mail that wasn't delivered because it was intentionally returned to sender. Second, Respondent alleges the loss of mail. Her own complaint uses the word loss, and she doesn't dispute that she alleges a loss for purposes of the FTCA's sovereign immunity waiver. There is no reason to give loss a different meaning in the postal exception. In fact, the presumption of consistent usage, contemporaneous dictionaries, and pre-FTCA decisions all support reading loss to have the same meaning. Respondent's claims, therefore, satisfy two out of the postal exception's three prongs, which is no surprise given that loss and miscarriage were understood to be overlapping terms when Congress enacted the FTCA. Respondent's contrary view that her claims satisfy none of the or with Congress's belt and suspender's approach to protecting postal operations from disruptive damages suits. I welcome the Court's questions. Mr. Liu, what should we do if we find ourselves in equipoise on this? Well, I would hope that there were enough votes that there was a judgment as to whether the facts here fall within the exception, even if there's some disagreement about which particular prong it fell in, and that that bottom line judgment would control the disposition. Did we give any special weight because this is a waiver of sovereign immunity? Well, this Court in Dolan rejected the notion that the exception should be interpreted differently because it implicates a waiver of sovereign immunity. We haven't taken issue with that here. We do think if there is a tiebreaker sort of canon at play, it is the canon that rules that govern jurisdictional issues, and sovereign immunity, of course, is a jurisdictional issue, that those rules should be made as simple as possible. And in our view, we've submitted the most simple rule. It's simply the rule this Court articulated on page 449 of Dolan, which is that injuries arising directly or consequentially from the mail not arriving at all or from the mail arriving late or damaged or to the wrong address fails to get to the right address, those are the types of injuries that are covered, and it doesn't extend any further. But loss doesn't typically convey, I mean, technically I suppose it can, malfeasance involved. I mean, if I say I lost my car, people aren't going to think somebody stole his car. They're going to think I forgot where it was or something like that. In other words, it doesn't say something bad has happened other than, you know, your own, you know, fact of paying attention to something. If somebody said I lost the mail, I would not think necessarily, I wouldn't think right away somebody stole it. Well, our submission, Mr. Chief Justice, isn't that loss necessarily encompasses malfeasance or intentional misconduct, just that it can refer to it. And we know it can refer to both intentional or unintentional conduct because, for one thing, Congress used it that way. In Section 1346B1, which is the FTCA's principal provision, the provision that a respondent has to get through just to be able to assert a claim, Congress used the phrase loss of property and then made clear that those losses encompass deprivations caused intentionally or negligently by federal employees. But Mr. Liu, if you agree that loss doesn't generally refer to intentional actions, and as the Chief Justice said, generally doesn't refer to them, but we all admit it can, what do we do with negligent transmission? Why bother with that if loss covers that? There's a lot of surplusage in your reading of this statute, not just with loss but with miscarriage, too, for that matter. So help me out. Yeah, so I'm happy to go through it. With respect to your specific question about any overlap between loss and negligent transmission, we don't think there's any overlap there. We think loss covers any deprivation, outright deprivation of mail, just I didn't get the mail. And negligent transmission covers I did get the mail, but I got it late or I got it damaged. So we don't think there's any overlap there. You're right that there is overlap in other parts of it. Miscarriage. Miscarriage. And we think what Congress presumably Maybe with negligent transmission, too, if transmission might include something more than it arrived, if it means it didn't arrive through negligence, it wasn't fully transmitted properly. That's why we need So there is still surplusage there, too, honestly, I think, but certainly with miscarriage. Well, the way And if you have any presumptions about statutory interpretation, it's generally to try and give effect to each of these words, right? That's right. But I think in this case, you know, the court has said that's not the be-all, end-all. And I think in this case, it would be wrong to apply the surplusage canon here, because we know what the historical meanings of these words were in 1946. Judicial decisions, like the opinion by Judge Cardozo on the New York Court of Appeals, use some of these terms interchangeably. He referred I'll let you go with this one, though. If we're going to go back to 1946, there was a big distinction between, gosh, I mean, boy, between miscarriage and detention, right? And this doesn't strike me as a miscarriage case in 1946. It strikes me as a detention case in 1946. If we're going to play, go back, we should. It was an important case. But this doesn't strike me as miscarriage. And if we're going to go to 1946 under your regulations, it's a detention case. Well, two responses to that. I think just as a definitional matter, there's a difference between miscarriage and detention. Miscarriage implies that something bad happened to the male. Detention might be a perfectly appropriate thing to do to the male. But the second point I'd make, and this goes to the historical usage, is that there are cases, and we cite them on page seven of our reply brief, where a male getting stuck at the post office, i.e. being detained at the post office, is referred to a miscarriage. That's the Cardozo case there. The male got stuck behind a radiator at the post office. And the way Judge Cardozo described it was that the checks in the mail had miscarried for that reason. Mr. Liu, Justice Gorsuch raises an important point about the surplusage. On the other hand, I guess, Congress often drafts things to be redundant and overlap. And ordinary people communicate that way, particularly when they're giving instructions too. So Congress would much rather have overlap than leave a hole. Exactly. And I think they're too strong. But how do we know? But at the same time, we do have the surplusage canon. I mean, the Eskridge book says it's often unrealistic. The Scalia book says sometimes drafters do repeat themselves and do include words that add nothing of substance. And I think that's right. But how do we tell? Yeah. I think here there are three clues as to why Congress embraced a belt and suspenders approach. One is the historical ordinary meaning understanding of these terms. If you look at the dictionaries and the dictionaries that existed in 1946, these are overlapping terms. And Congress included them in the statute anyway. The second point I'd point to is the way Congress approached the intentional tort exception, which is in 2680H. There, Congress used overlapping terms and included both deceit and misrepresentation, even though, as this court pointed out in footnote 16 of Newstat, deceit encompassed all kinds of misrepresentation. That was the understanding of the restatement first of torts. And the last thing I'd point to is the importance that Congress attached to the postal exception. This was not an afterthought exception. This was an exception that was in the earliest drafts of the FTCA. It's the very second exception listed. And you can understand why in 1946, when writing a letter was the only way to communicate in writing, that Congress would have wanted to protect that postal function. Counsel, let's assume that your definition of miscarriage, because this is what I'm assuming, you define it as a failure to carry the mail properly. Then loss, to me, and negligent transmission are redundant and useless. Congress knew in the customs duties, custom handling exception, which we looked at in Kawash, how to write a very broad exception that covered everything, intentional and conduct. But it didn't. It shows very particular words here. And so let me give you some examples I'm troubled by, why they would have imagined that intentional malfeasance would be accepted by this. By the way, I think intentional malfeasance often will be covered by a different exception in the FTCA. In many, some are discretionary. In others, they're outside the scope of employment. There's a lot of other exceptions that cover a lot of the intentional misconduct. But I'm troubled by this. A postal worker refuses to deliver any mail-in ballots from county he associates with a certain political view. Or on election day, the postal worker postmarked some ballots but not others because he's favoring one side or another. This is a miscarriage, isn't it? Yes. Okay. So that's exempted. What about when a postal employee writes harassing messages on an individual's piece of mail every day that he I don't You are a thief. You're a baby killer. Whatever other harassing messages you want. That's a miscarriage. He's not carrying the mail properly. I'm struggling with that because there's not really anything bad that's happened to the mail in the sense that the mail is getting there on time. It's getting there. The contents are not damaged. But it's not carrying it properly, is it? Well, I think when it's being carried properly, it's referring to the duty that the duty of carriage that the post office has to both the sender and the recipient. And that includes not letting the mail intentionally be damaged. Yeah, I think that would be the key question in that hypothetical. Whether you could count that as damage. How about when a postal employee refuses to take a person's mail in a rural community? There's a post office there. There's he's supposed to do it. But he forces her to drive 30 minutes one way to a post office who will take her mail. If if it's a situation where the sender has dropped off the mail and don't qualify it, he just doesn't like this person. Oh, no, no, we don't. If if the mail hasn't entered the mail system, well, it's there. No, he's refusing to take it to her. That's a miscarriage, according to your definition. I don't think so, because I think this implicates the line that this you're fighting the hypotheticals because you recognize, I think that inherent in using the negligent transmission. There is a sense that Congress is using this as a verb to start with, and that Congress is looking at these situations in their generally accepted terms. As Justice Gorsuch said, generally we think of loss as negligence. Miscarriage, um, in all the cases you cite, they all involved non-intentional conduct, except for one, which was a case 50 years before, which really didn't have to do with miscarriage. It was a claim between newspapers or a newspaper claiming that the post office should have selected it to and not someone else. And so even in that case, it wasn't really a miscarriage of the advertisement. It was a failure to deal case. So I guess I'm having a problem with your starting proposition, which is that these terms have to encompass both intentional and or negligent conduct. Yeah. So with the unintentional, unintentional line, um, I would make three quick points. One is that if you look at the traditional legal authorities, we look at the evidence of common usage at the time of 1946, none of those authorities draw a line between intentional and unintentional. That's true of the dictionaries. That's true of the decisions. We said on page nine, uh, a number of decisions that use miscarriage intentionally to refer to intentional conduct. Later in our reply brief, we have examples of cases could be distinguished. I do lose. I don't think so. I mean, I, you know, we cite a decision involving loss that involves postal employees stealing the mail. I can't think of anything more willful than that outside the scope of his duties. So that would be exempted under a different exemption. Well, but I think it still goes to what the ord ordinary meaning of loss was at the time. Uh, maybe another part of the FTCA would kick it out. But our point is that loss had a settled historical meaning and it covered intentional conduct. So Mr. Liu, I mean, this is a loss in a particular context. So there are three things basically that the postal service can do to your letters that we're not going to allow you to sue about. So here are the three things they can negligently transmit your letters and we're not going to allow you to sue about that or they can lose your letters, lose your letters. They're definitely not intentional. It's like you lost your keys. You lost your pen. They lost your letters. We're not going to allow you to sue about that. And then there's this miscarriage word that's stuck in the middle of them. That's kind of like, what does that mean? They miscarried your letters. It seems kind of a weird word. But I think I agree with you when you said these are supposed to be overlapping and it's not a big deal if there's some redundancy here. I think that this is, if you look at this statement, it's kind of words are known by the company they keep. On one side, they're losing your letters. On the other side, they're negligently transmitting your letters. And on the other side, they're miscarrying your letters. And miscarrying basically has the same kind of meaning, which is they did something mistakenly with respect to your letters. And that's the way that seems most natural to me to read this sentence. And I would say a few things in response. One is I think that Nosseter intuition works only if you, as I think your, part of your question did, buy in that loss refers only to unintentional conduct. We think that contradicts the meaning of loss in the FTCA's Sovereign Immunity Waiver. Yeah, I don't think that that's an argument that works. Because if you look at the Sovereign Immunity Waiver, it's using loss in an entirely different way and context. It says the district court shall have jurisdiction over claims for injury or loss of property or personal injury or death. So there loss is functioning as just like one of a number of different kinds of harms that a person can suffer and bring suit about. But this is like losing your mail. That's what this is about. And when you lose your mail, you don't like destroy your mail or tear up your mail or purposefully put them in the trash chute. You lost your mail. They lost your mail. The Postal Service lost your mail. Sorry you can't sue about that. I think that set up reveals one of the debates is who lost what. I think it is quite natural to say that respondent lost her mail. Indeed, she uses that same phrase, phrase the other day in her that the Post Office is doing these things. The Post Office is negligently transmitted. The Post Office is miscarrying. And the Post Office is losing your mail. And notwithstanding that the Post Office did all those things to you, you can't sue. I don't think I don't think there's a reason to shift perspective from the waiver to the exception. I think these are three parallel terms. You are shifting perspective from loss as opposed to miscarriage or negligently or negligent transmission. These three terms are the terms that have to be read in parallel form. The Post Office is doing these three things to your mail and you can't sue about any of them. Your Honor, I think the better way to read them is that these are three harms just as in the waiver. Loss is paired with injury in the waiver. Loss is paired here with two other types of more specific terms that describe injury to mail, i.e. miscarriage, negligent transmission. Your Honor, you suggested that if you translate them into verbs, there's some parallel structure. That's actually not true. I mean, no one in 1946 would have said the government miscarried the mail. The mail never took the government or the postal worker as its subject. The mail, when miscarriage is used as a verb, it takes the mail as its subject. And that's because for a reason Respondent points out on footnote 19 of her brief, miscarriage is an intransitive verb, just as you wouldn't say the government arrived the mail, so too you wouldn't say the government miscarried it. I'm sorry, go ahead. And so there really is nothing to be gained from trying to convert these nouns into verbs. There is no single consistent way. If I accept that textual reading and I also even start by accepting your argument that the postal service or the postal exception immunizes intentionally caused losses and miscarriages, those harms happening to people could be intentional. Let's say I start there. I guess I don't understand why all of Ms. Conan's claims here would be immunized under that exception. She has four claims here. Only potentially one of which, it seems to me, even relates to the failure of her mail to arrive as the gravamen of her claim. The way we think about torts is people are bringing claims alleging that wrongful conduct or, you know, negligent conduct by the defendant is a breach of a duty of care that has harmed them or breached a duty that harmed them. And I guess what I'm suggesting is that she's got claims here that really aren't about the loss of the mail, right? So they're not keyed to the failure of her mail to arrive. So the intentional infliction of emotional distress claim, for example, seems related to her claim that postal employees carried out a campaign of racial harassment with respect to how they treated her mail. And yes, we have the my mail never arrived is an allegation, but that's not her claim when it comes to intentional infliction of emotional distress. So I'm wondering why, even if you're right, she doesn't get to go forward on at least that claim. So we think this is an issue that can be left on remand. The principle we're trying to vindicate here is simply the legal standard, and I don't think the court really needs to So you're not saying that postal service knocks out her IIED claim? We're not asking the court to decide that. I think that's an issue that can be left for remand. On remand, we will make that argument, and we'll also make the argument that respondent has forfeited any contention. All right. So going to the particular argument of assuming she has a claim in her complaint that actually is about the mail not arriving, as opposed to her IIED claim or her tortious interference claim, those seem like they're talking about other things. I guess I'd go back to Justice Sotomayor's suggestion that your argument indicates that Congress would have intended to immunize a postal service worker who tears up a person's rent check or social security check in front of them on their porch right there, intentionally, so it doesn't get delivered. And you're saying, yes, that's in the exception. Yeah. And I don't think that should come as a surprise. Congress immunized all sorts of intentional conduct in the FTCA's exception. So in the intentional tort exception, it immunized assault and battery and misrepresentation. But there has to be a reason that makes sense. And so the whole thing is Congress, the FTCA is Congress authorizing tort claims to be brought against the government. This is an exception. And so the exception kind of has to make sense. And I guess what I'm trying to figure out is why Congress would have, we understand why Congress would have wanted to immunize negligent loss of the mail, miscarriage. First of all, that happens all the time. And you could imagine a rational Congress saying we just can't run a post office if everybody whose catalog didn't get delivered can sue us. So we're not going to allow that. That makes perfect sense. What is hard to get one's mind around is in a statute in which Congress was authorizing tort liability, that a classic scenario in which the mail is actually being intentionally damaged, lost, not delivered, they also meant to take that off the table. Two points. One is that Respondent's rule is so broad in how it identifies intentional, that it would encompass not just the willfully malicious hypos that Your Honor gave, but also routine application of postal regulations. Every day, the Postal Service intentionally withholds mail, either because it can't identify the addressee, because it thinks a residence is vacant, because it thinks the mail... I understand, but the question is which overbroad rule are we going to go with? You're saying because that's the case, we should allow the tear up scenario to occur, that Congress could have wanted that. And I guess I don't understand why... That gets to my next point, which I think as to the egregiously willful conduct, Congress, if I may finish, Mr. Chief Justice, Congress made the same judgment in the postal exception as it did in the intentional tort exception, and indeed some of the other exceptions that are far broader than the postal exception, which is that these damages suits aren't a good way for identifying who the bad actors are. It may well be that there are allegations that something willfully wrong happened. We're going to want to present evidence to refute that. It's going to be burdensome to the Postal Service and to other parts of the government, and Congress didn't think this was the right way to go about identifying those cases. Thank you, Counsel. Justice Thomas? Justice Alito? Well, as for the possible reason for immunizing intentional conduct, the answer that I took from your brief was that allowing that would open the door to too many lawsuits, and it would undermine the immunization for the negligent transmission of the mail. So I don't get my Christmas cards until three weeks after Christmas, and I can't sue on the ground that it's negligent. But if I say, well, the delivery person doesn't like me for one reason or another, it was intentional, and then I'm in court. Yeah, no, that's true. I mean, we're talking about over 300 million pieces of mail delivered a day. We get over 300,000 complaints about the conduct of letter carriers a year. If even 1% of those complaints results in a lawsuit, the number of lawsuits that the Postal Service faces each year is going to quadruple. And as Your Honor's question suggests, things like intent are easy to allege and hard to disprove. It may well be at the end of the day we're going to be able to show that some alleged instance of intentional misconduct was indeed just a mistake. But at that point, we've defeated the purpose of having an immunity from suit, which was to relieve the Postal Service of the burden of having to take postal workers away from their day-to-day jobs and force them to become witnesses in court. Is it so to me, Your Honor? Counsel, you are forgetting, however, that there's a requirement of good faith allegations. Merely saying someone dislikes me is not enough, correct? That's right, and I think... Now, putting that aside, so much else is, as I pointed out, would be exempted by other provisions, correct? I don't think a lot of any of the other provisions is really going to address this problem, especially the Congress's preference for these suits to be, for this immunity to be an immunity from suit. I go back to, they could have said very simply, anything having to do with mail delivery is out, but they use something different than they did in customs. Oh, but to be clear, our position isn't that the exception should be read any more broadly than the Court read it in Dolan. The Court in Dolan limited the exception. But what else wouldn't be covered? Even in Dolan, I'm not sure how, accepting your definition of miscarriage, we could have ruled the way we did and placed any limitation, because placing a package on the porch, not near the door or on a step, is a failure to properly carry the mail. You're supposed to deliver to the recipients and not to a porch step. No, we read Dolan to say that these three terms, and the Court described them as harms on page 490, these three harms are harms in the sense that they are bad things that happen to the mail. And I think what the line the Court was drawing in Dolan is that if you're alleging a bad thing that happens to someone around the mail or to something else, you're outside the scope of the exception. But what's clearly within the exception are bad things that happen to mail. It doesn't arrive or it arrives, but it's damaged or it's late. And all we're saying is that's our simple rule. There's no more fine-grained analysis about why the mail didn't get there. Thank you. Justice Kagan? Justice Gorsuch? Briefly, not to belabor the point, Mr. Liu, but just following up on Justice Sotomayor's point, would these three terms, as you read them, cover the waterfront of anything having to do with deliver the mail, so the government is effectively totally immunized, intentional, non-intentional actions in the delivery of the mail? It would immunize us only as to bad things that happen to the mail, not as to auto actions. No, I understand your Dolan point. But putting aside the Dolan point, in the delivery of mail, it would immunize everything. Correct. So long as we're not including in delivery what the Court rejected in Dolan. Dolan, yeah. Okay. And isn't it an odd way to do it, though, to have three terms rather than just to say that? I don't think so, because these were the terms that was in the vocabulary in 1946. And if you compare the terms here to the terms of the waiver, all Congress is doing is coming up with two words, miscarriage and accident transmission, to describe injury to mail. It's covered loss of mail by using the same word, loss. And now... I understand the point. Thank you. Appreciate it. Justice Kavanaugh? On Dolan, it's got a pretty straightforward sentence summarizing what it thought the rule would be. I mean, what, deviating from that, what response should we, what concerns would you have about deviating from what the Court said in 2006? Well, I think it would be a sea change in how the government has approached the postal exception from the very outset. The way the Court described it in Dolan was to capture bad things that happened to mail, and to leave the United States open to liability for other things, including slip and falls and auto accidents. And when you look at the composition of the cases that the Postal Service faces each year, it's about 900 cases, about 800 of them are about auto accidents, and another 70 or so are about slip and falls. And then there's a smaller category of other. But I think if you look at that composition of cases, you would say the postal exception is working exactly how Congress intended. The main core function that I was discussing with Justice Gorsuch is protected. And these other types of injuries that aren't about the bad things happening to the mail are allowed to go forward in these lawsuits. I think if you accept respondents' rule, which would be to disregard the rule articulated in Dolan, we're into a universe, as Justice Alito suggested, where we're going to be faced with, I think, a ton of suits about mail. And they're not all going to be bad faith. They're going to be plaintiffs who simply aren't in a position to know what happened to their mail, and they're just not going to give the government the benefit of the doubt. They're going to infer that their mail didn't arrive because of a rude comment that they heard or what have you. And that's going to lead to discovery, a trial on what actually happened to that mail, which we think is going to be quite burdensome. Thank you. Justice Barrett? Justice Jackson? In the cases that you just described, though, isn't that the work of Iqbal and Twombly in terms of the government's response? I mean, if a plaintiff is just saying my mail — the claim is my mail didn't arrive, that was harmful to me, I'm suing the post office, that seems to be heartland postal exception. I don't think anybody disagrees with that. But if there's some allegation about intent with respect to the mails not arriving, I would think there would have to be plausible allegations that there was some intent on the part of the post office — the delivering person. And surely the government would not concede to go to trial over that issue just because the person says in their complaint, my postal worker intended not to deliver it to me. That's true. We certainly would file a motion to dismiss. So the real, like, worry is in these, I would assume, rare cases. I mean, I can't imagine that the postal workers are, you know, actually, actively, intentionally withholding people's mail on a regular basis. So I just don't know how many cases we're talking about here. That's part of the point I was making before. As a matter of routine, the Postal Service intentionally withholds people's mail for all sorts of legitimate reasons. That's an easy defense then. I mean, there it is. It's not intentional in the sense of a harm. It's an easy defense once we've had discovery. It's not an easy defense when we're trying to fight off a complaint. Because from the outside, that intentional withholding can easily be mistaken for something else. All right. Let me ask you about a hypothetical, because I'm looking at mere miscarriage definition. And you define miscarriage as the failure of a mail, the mail to arrive. And you say even intentionally claused failures to arrive would be covered. So let's say we have a mother who regularly writes her son who's in the military. And a postal employee maliciously, intentionally, and repeatedly returns her mail as undeliverable and stamps deceased on it. Could she sue for intentional infliction of emotional distress under those circumstances? You're saying your case doesn't cover intentional infliction of emotional distress. Right. I don't, I think the postal exception would deem that as a miscarriage of mail. And in fact, there are cases, believe it or not, from 1946 and before where an erroneous message is delivered, like deceased. And the plaintiff wants to recover consequential damages for that. And I think that is the heartland of what... Even though she also meets the elements of IIED under those circumstances, that this is an extreme and outrageous intentional act that causes her emotional distress, you're saying this would, even though that's a separate claim, it's not really about what happened to the mail, you're saying that would be covered? That's what I'm worried about with this component. This implicates a different part of the postal exception. And the language of the postal exception begins any claim arising out of the loss, miscarriage, or negligent transmission. And if the damages, the injuries being asserted, the emotional distress arises out of... Yeah, but I think you would have a Dolan problem if you did this. I'll figure it out. Thank you. Thank you. Thank you, Counsel. Ms. Anand? Mr. Chief Justice, and may it please the Court. Three things I want to highlight about the government's presentation. First, they did not dispute that no ordinary speaker of English would ever say Rojas lost Ms. Conant's mail. Now, they point to 1346B that is specifically worded differently. The question there is did the government employee cause the loss? That's not how 2680B is worded. Second, the government has produced exactly zero examples, no cases, no books, no newspaper articles of miscarriage of mail being used by an everyday speaker of English to describe wrongful conduct on the part of the postal worker. That is, postal workers choosing to put the package in the wrong place. Not just intentional in the sense of I put it on the doorstep, it didn't fall out of my bag, but I thought it was the right doorstep, right? We've never said, the Fifth Circuit's never said, no one has ever said that that is not a miscarriage, but in the sense of wrongful, which is our test for miscarriage. Third, my friend didn't dispute that on the government's reading, the term miscarriage renders both the term loss and the term negligent transmission entirely superfluous. So he says belt and suspenders, this is like not just two terms that have some overlap, but it's like belt and belt buckle. They're two terms that are completely overlapping. And even if we interpreted statutes that way, the government's story for why Congress would do this makes no sense, right? If Congress is worried about miscarriage somehow being under-inclusive, it's worried about miscarriage only covering the negligent stuff, right? We give an unbroken string of examples from Henry VIII, oh negligence, fit for a fool to fall by, to romance novels, to cases. Everyday speakers of English use miscarriage to refer to negligent conduct. And so if you wanted to belt and suspenders miscarriage, the term you add in is not negligent transmission. It's something to do with wrongful conduct. I welcome the Court's questions. What do you do with Mr. Lew's argument that the waiver of immunity did not include things, bad things that happened to the mail? He said that generally. And that Dolan, because it wasn't about bad things happening to the mail, was outside the waiver of immunity. So I think that's just a... I'm sorry, it was included in the waiver. I understand. Thank you, Justice Thomas. So I think that's just an over-reading of Dolan. So the sentence that he points to says something like, as a general rule, these sorts of damages don't lie. It's using that hedging language, because again, as a general rule, we're talking about good-faith mistakes. We're not talking about the rare instance where a postal worker is using the mail to effectuate harassment on somebody. So I think even taking that sentence of Dolan at face value, right, wrongful conduct was not before the court in Dolan, but even assuming it was covering that, I think that's what the phrase, the general rule is doing. And I suppose I would say that feels passing strange given the rest of the statute and its emphasis on kind of specifically carving out property-related torts. So for instance, 26ADH, the so-called intentional tort exception, conspicuously omits conversion and trespass to two-property torts. And so I think what my friend on the other side is saying is no one in the federal government can engage in conversion and have the United States be exempt from liability except for postal workers. Is there a long history of Federal Tort Claims Act suits about the mail itself, delivery, non-delivery laws? So there are some cases. We'll note that kind of in response to Justice Jackson's question, most of those don't even get into court under 1346B. If you just say, my package doesn't show up, it gets kicked out of court because you haven't even plausibly alleged negligence, let alone wrongful conduct, right? You would think that with 300 million pieces of mail per day, you would have a significant number of suits that do involve this level of harm. So I think you may have some number of suits that involve this level of harm, meaning enough to prompt someone to go to court and sue, but not that involve wrongful conduct within the scope of employment, right? That's a very narrow needle thread. Think about what Ms. Conant alleged here, right? Two years of non-delivery, not just a one-off package. She's filed administrative complaint after administrative complaint. She can say, look, every single one of my neighbors is getting mail. She says, when you found out I own this other property, mail stopped getting delivered there. She's got all this other kind of circumstantial evidence that doesn't have to do with the mail delivery. Those sorts of allegations, I think, will be rare. And remember, the government came before you in Dolan and said, if you rule for petitioner, frivolous claims will inundate the Postal Service. A decade later, they're coming and saying, actually, the postal exception is working just as it should. And so I'd be a little bit hesitant to believe those claims. Ms. Anand, I think I would really like to hear you address the presumption of consistent usage point in the waiver and the exception, because I think that's a harder argument for you, because when you describe loss of property, loss of mail, whatever, as the kind of damage, then it can cover intentional and negligent torts. Now, you handle that in your brief, but I would just like to hear you talk about it a little bit more, because I think that is one of the hard parts of your argument. Sure. So we don't think the presumption applies, and if it applies, it's overcome. So we don't think it applies, because that presumption is where two words are being used in the same sense about the scope, right? So interest in the Internal Revenue Code. If it's talking about the stuff you get when you leave your money in the bank, in both places it must cover compound interest or in neither place. But that doesn't mean that in the Internal Revenue Code, someone can't use interest to mean, you know, present interest in an estate, right, a claim or entitlement. The presumption of consistent usage says, if both terms are being used in the same sense, then they cover the same terrain. Here we submit that it's clear that loss in 1346B is being used in a different sense, the deprivation sense, than in 2680B. And our kind of three textual clues for that, the first is that in 1346B, there's a specific reference to wrongful conduct on the part of the government employee. Second, the sentence is structured differently, right? It's asking, did the government employee cause the plaintiff to lose property, not just if the government employee lost property? And third, as the government itself acknowledges on page 11 of its reply, loss of property is something of a term of art, and when used that way, loss of property, loss invariably means deprivation. Your reading of that sentence from Dolan to Justice Thomas, I thought was a bit aggressive on the general rule. I mean, the court was there specifically distinguishing the general rule from the, like having a case-by-case determination. I thought it was articulating a general rule, but that would apply across the board. But more importantly, kind of statutory stardecisis, even if that doesn't formally apply, just we set forth the rule, and Congress hasn't changed it. And this would come, I think, as a little bit of a surprise to Congress, which would probably have to address it pretty quickly. So let me take each in turn, Dolan, and then why I don't think this is a surprise to Congress. So on Dolan, you know, that sentence has a lot of hedging language, right? It also says we think it more likely that Congress intended to remain immunity. And so even if you think the court was even contemplating wrongful conduct, right, I think that that hedging language does a lot of work. And if you're going to take that sentence in Dolan and say it was thinking of kind of all cases, I think you also have to take the part of Dolan where they say loss is destroyed or misplaced and miscarriage is delivery to the wrong address, neither of which we fall into. On the Congress would be surprised point, you know, I don't think so. Again, Congress specifically did not put conversion, for instance, in the FTCA's waiver provision. Every other kind of intentional tort, assault, battery, libel, slander, all that stuff, there's an exception for. There's no exception for conversion. And so I think Congress would actually be surprised in the other direction if this Court were to say, conversion, liability if anyone else does it, but not if the Postal Service does it. MS. PEPLAUSEN. So, Ms. Anand, I guess I'd like to get your thoughts on the theory that I shared with Mr. Liu, which is that in the context of a broad statute that is authorizing tort claims against the government, could it be that what Congress was actually doing with the postal exception was just immunizing the Postal Service for liability for a particular claim? If your tort claim has as its gravamen the loss, miscarriage, or negligent transmission of mail, I'm seeking damages because that happened to my mail, that's out, says Congress. This is my theory. But anything else that you are saying, even though it evolves perhaps as an allegation that those things happened, if your claim is not that, then that's in. I kind of thought that's what Dolan was doing. Because in Dolan, I guess there was an allegation that there was the negligent transmission of mail in the sense that it was put on the step in the wrong place. And if she had just come in with no step in, you know, and just said, the gravamen of my tort claim, the reason why they breached a duty and did something wrong was because they negligently transmitted my mail, maybe that's out. But Dolan says, no, her claim was really a slip and fall claim. It's a different kind of tort. And so if that's the theory, I'm asking you, is Mrs. Conan for her, she has four claims. Are they all making the kind of I'm suing you because you've lost, miscarried, or negligently transmitted my mail claim? No, Your Honor. Three of the four certainly aren't. Conversion, maybe, though as I've explained, I think it's a very weird result if you say that conversion falls out. And, you know, as we pointed out at the bio stage, that makes this a very strange case to think about the meaning of loss and miscarriage. Because again, the gravamen of the harm here is, as you note, the kind of campaign of racial harassment. Which fits, it seems, in the tort. I mean, there are tort elements here for intentional infliction of emotional distress that is just the defendant acted intentionally or recklessly, the conduct was extreme and outrageous, and the actions caused the plaintiff emotional, severe emotional distress. That's right. And we think so, too, with our nuisance claim. And so, too, with our intentional interference with prospective economic relations. Now, I do want to say, I think that our conversion claim goes forward as well. Because again, I think at the point where the government doesn't give you any examples of an ordinary speaker of English, I'm happy to address the reply nine examples, Justice O'Mara, I don't even think Foster is such an example, the one case you pointed to. Where they've given you no examples of an ordinary speaker of English saying miscarriage of mail and meaning the postal worker did something wrong, I don't see how you can decide that our conversion claim doesn't go forward as well. If miscarriage is, I'm sorry. Go ahead. Sure. No. Go ahead. All right. I wanted to shift from miscarriage to loss. Miscarriage is more a term of art. But it's not clear to me why a claim arising out of the loss of property cannot include intentional, a loss that results from intentional conduct. That's just not the way the term is normally used. A claim arising out of a loss does not have to involve property that has been lost in the sense that it can't be found. It just means that there's been a deprivation in the value of the property. I can submit, suppose vandals set my car on fire and I submit a claim to my insurance company, that is a claim arising out of the loss of my car. Even though I know where my car is, it's in front of my house, but it's a burned out Hulk.  Yes, Your Honor, but we would never say, and this is Justice Kagan's point, that the vandals lost your car, right? And that's the way that this whole statute is structured. It says it doesn't talk about what somebody has done. It talks about the consequences of something, which is any claim arising out of the loss. So I think that this is sort of consistent throughout the statute. It's not just to prove an assault happened in the abstract. You have to prove the government assaulted you, right? And so here it's the government lost your mail. Now, even if you don't agree with me on that, I think if you agree with me on miscarriage, that resolves the question. So that is even if in some settings loss covers wrongful conduct, I don't think we have any story for why Congress would say wrongful conduct not counted under miscarriage, wrongful conduct not counted under negligent transmission. Well, that's your surplusage argument. And, you know, the surplusage canon is a value, but it's not the way Congress always reads, always writes statutes. It's not the way people always talk. So it's valuable, but it's worth only so much. But I'm really troubled by how you extract from how you read into the phrase any claim arising out of a loss to exclude intentional conduct. So just to clarify, I just want to make clear, that's not actually our superfluity argument. What I'm saying is if you accept our miscarriage mens rea argument, then I think you've got you either have to accept that loss is limited to negligent conduct, or you've got a situation where, okay, postal worker takes a hammer to a package. Scenario one, he just breaks off the handle of the mug. Scenario two, he totally shatters the mug. Scenario one, the government says that's not a loss. He just broke off the handle of the mug. And so it's one of the other two terms. So wrongful conduct, and so therefore, it's not immunized, right, with liability. It's a different question about whether the loss of the mail means the loss of all value of the mail or a diminution in the value of the mail. That's right, but Congress could not have wanted liability to turn on that finite distinction. And if you say loss, but only loss covers wrongful conduct, right, miscarriage, negligent transmission exclude wrongful conduct, then at that point what you're saying is Congress wanted liability to turn in a case involving wrongful conduct on this kind of fine distinction between destruction, loss, wrongful conduct covered, and diminution, not loss, wrongful conduct not covered. Assume, go ahead, if miscarriage does cover wrongful conduct, so let's assume that, which is contrary to what you've been assuming, but assume miscarriage covers intentional wrongful conduct, then your arguments are? So assuming, again, contrary, mountain of evidence, I'm reserving it, you're not conceding anything, you're not conceding anything. Then I think our fallback position is that you have to think about, we basically argue Dolan, right, Dolan says loss is destroyed or potentially misplaced, miscarriage is delivery to the wrong address, we are neither of those two, so we are some kind of transmission error. At common law, this would be called a willful refusal to transmit or a wrongful transmission, we give you case sites for that. Congress conspicuously doesn't include willful refusal to transmit in this list, it's only negligent transmission. So I think we still win, but I think if you decide for us that miscarriage only is limited to negligent conduct, you don't have to get into the kind of fine distinctions between the three terms. If I may make one other point about the kind of structure of the FTCA, so the FTCA's exemptions are divided into kind of two categories. Some are very broad, right, any activities of the Tennessee Valley Authority, fiscal operations of the Treasury, that sort of thing. The others list specific actions, often with a mens rea, right, so 2680A, you know, executing a statute with due care, 2680H, battery but not negligent touching. This one, 2680B, as Dolan said, is clearly in the latter mold, right, it's not saying any activities of USPS, any failings in the postal obligation, any mail handling activities, it's not doing that. It's listing three specific terms pegged to a mens rea the way the other provisions do throughout the FTCA. Right. Can I ask you a question about Mr. Liu's point that miscarriage wasn't used as a verb at the time the statute was enacted? You know, Justice Kagan said, well, you know, you can lose the mail, you can negligently transmit the mail if you're the postal worker, or you can miscarry the mail, as in, you know, misdirect it to the wrong place. And one of the responses that Mr. Liu had to that point was, well, miscarry wouldn't have been used as a verb, it was this term of art. What's your response to that? Because I do think it matters whether you view these words as something that happens to the recipient or something that was done by the postal worker. Right. So I'll say, so I'll answer your miscarriage question, and then I want to say one more word about that. So he's right that in general it was seen as intransitive, but the Webster's First and Webster's Second Dictionary, as we point to, note that it was sometimes used transitively. So you could say, I mean, in fact, Dolan says, mail is miscarried if it goes to the wrong place. I'm not sure it matters a ton. You can kind of rephrase the question to get at the agent in a different way. You could say, did the letter miscarry by Rojas? Was the mail lost by Rojas? And I think you're still in the same place. And I think whatever you think about miscarriage, it has to be clear that all the other nouns throughout the exceptions are not just, did this happen? It's, did the government employee do this? Right. We give the example of assault. You would never, you don't come into court and say, like, there was an assault. You have to say, the government employee assaulted someone. And so we think the same thing is true of loss. Again, if you don't buy that argument, I think the two other ways to think about the loss term, the first is sort of what we say in our brief, which is that typically loss is thought of as unintentional. And whether it's insurance contracts or cases or 1346B itself, people usually specified intentional loss or loss caused by wrongful conduct when they meant to change that default. And second, again, if you buy our miscarriage mens rea argument, there's just no good reason why Congress is saying one term encompasses wrongful conduct and the other two don't. Particularly where, as Mr. Liu noted, there's some redundancy and certainly some overlap among the terms. If I can make one other point about consistent usage, and then I'll turn it over to Sariad in questioning. In 1346B, Congress is using loss in just a fundamentally different sense than it is in 2680B. We knew that because of the three textual clues that I gave you. And as a result, I don't think that the presumption of consistent usage even attaches because it's only about where two terms are both being used to mean, for instance, deprive and deprive, the same source of deprivations count. It doesn't say that any time a term is used, it must be used in the same sense. Thank you, counsel. Justice Thomas. Justice Alito. Do you want to say something in response to Mr. Liu's point about the consequences of adopting your interpretation, which is that it's going to be very easy for people who are unhappy with the delivery of mail to claim that they're not getting their letters because of intentional conduct as opposed to negligent conduct. Is that going to be hard for people to plead consistent with Rule 11? I mean, a lot of people may think that what's happening is intentional. I don't get my mail because I didn't give the mail carrier a tip at Christmas. Or I have a big dog that ran up to the door and scared the mail carrier on one point. Or I complained to the mail carrier that he or she was putting my neighbor's mail in my mailbox, or putting my mail in the mailbox of my neighbors, or she or he looked askance at my holiday decorations, or there's some characteristic about me that the mail carrier doesn't like. Is that going to be hard? And what will the consequences be if all these suits are filed and they have to be litigated? Is the cost of a first class letter going to be $3 now? So I do think that's going to be hard. So remember, even alleging negligent conduct is tricky here because if all you have is my package didn't show up, you're going to get kicked out of court. Certainly alleging wrongful conduct. And so again, we're not just, I just want to clarify because I think Mr. Liu's presentation maybe muddled these two things. We're not saying intentional just in the sense of like it didn't fall out of the bag. We're saying wrongful, as in you knew you were putting it in the wrong place. I do think that the ICPAL standard makes that quite tough. And that's particularly tough given the other FTCA guardrails, right? So still has to be within the scope of the employment, 2680A, right, basically says kind of mistakes of law or anything that gives the government employee discretion doesn't count. And if there's some conduct left that makes it into court, we know Congress did not want to immunize USPS wholesale or even all failings in the postal obligation. It knew how to do that. It did that with the majority of the other exceptions and didn't do so here. All right. Thank you. Justice Sotomayor. Thank you. Justice Gorsuch. Very quickly, I promise. So there are various grades of mens rea. Yes. You knew it was coming, didn't you? Yeah. All right. So you say this is negligence. Reckless, knowing, thoughts? Right. So this is a general problem with the FTCA. 1346B carves the world into negligent and wrongful, right? This is written before Restatement Second, before the model penal code. People didn't really think of recklessness as a different mens rea. What courts have said for purposes of 1346B, right? No one said, well, Congress said negligent and they said wrongful. So I guess reckless conduct is out. What they've said is at the time, you know, tort law equated recklessness with gross negligence, which is a species of negligence. And so recklessness kind of falls under the negligence bucket. I'll be candid. I haven't seen litigation over reckless conduct and whether or not it counts as miscarriage, but I'd assume it would operate the same way. That is, I think miscarriage covers a bunch, covers good faith mistakes, even if they're like really bad mistakes. Just to follow up quickly on Justice Alito's question, if you allege that you exchanged words with your mail carrier at one point, and so you're alleging that he intentionally misdelivered or did not deliver the mail, is that enough? I certainly don't think if it's a, first of all, I don't think the one-off package gets into court because no one's going to pay a $400 filing fee and hire a lawyer if it's like one package that doesn't get delivered. Well, let's say it's a consistent slowness. You're alleging your mail's delivered slowly because you exchanged words with your mail carrier one time. I think it depends on the extent. I think if it's two years, and you can say every single one of my neighbors gets their mail faster than I do, I do think you get past the pleading. How about if it's just a week? I think the Iqbal standard is fuzzy. I would suspect a week is probably not long enough. And remember, this is not just allegations. Because this goes to jurisdiction, you know, the way that all the other exceptions that turn on mens rea work is that, you know, the government can demand at a very early stage some sort of proof. It's not just you allege and you get into court. You can do jurisdictional. The proof will be I had a negative conversation with my mail carrier. You're not going to know. And that my mail was delivered more slowly or some important piece was not delivered at all. That's all you got, but that's all you can have. Is that enough? Get discovery? I don't think one week would be long enough, but again, I think what Dolan said in response to precisely this argument, right? Frivolous claims are going to inundate the Postal Service. Dolan says the ordinary protections against frivolous litigation must suffice. And it turns out in the decades since, there hasn't been a problem with a flood of claims contra the government's prediction. Thank you. Justice Parrott? No. Justice Jackson? No. Thank you, Counsel. Rebuttal, Mr. Liu? Thank you, Mr. Chief Justice. Just a few quick points. First on miscarriage, we've pointed to dictionary definitions in pre-FTCA cases that show what the ordinary meaning of miscarriage was. The meaning was broad enough to encompass any time the mail failed to arrive. I think the burden is really on respondent to point to something that justifies giving miscarriage a narrower reading than those historical sources show. She hasn't pointed to anything. I think the idea that miscarriage somehow incorporated some sort of model penal code-esque distinction between negligence all the way to willfulness is just wrong. Any time the court saw the mail not arriving, they labeled it a miscarriage. And that's how we think Congress used it in the FTCA. On loss, on consistent usage, I didn't hear any reasons to give loss a different meaning in the postal exception than in the sovereign immunity waiver. I think the main reasons my friend pointed to was that there is language in the waiver that doesn't appear in the postal exception, but that's built into the presumption of consistent usage. The presumption has work to do only when the word as it appears in Provision A is clarified by language in Provision A, but that language doesn't appear in Provision B. If that language did appear in Provision B, you wouldn't have to apply the presumption of consistent usage. This is a heartland application of that presumption. And the next point on loss has to do with this whole business of converting the words Congress used into verbs. The words work perfectly well as nouns. They describe the consequences that certain negligent or wrongful acts can have. For miscarriage, it captures the consequence of the mail not arriving, arriving late, arriving damaged, negligent transmission, the mail arriving late or damaged. There's just no one consistent way to take Congress's language and convert it into verbs. And that's for the reason Justice Barrett mentioned. You can't just convert all these nouns into did the government X the mail. It doesn't work with miscarry because miscarry wasn't used in that way. If you said that to a listener in 1946, they wouldn't know what you were talking about. Judge Cardozo's example in Heinrich is a good example. It talks about checks being lost in the mail and it says the checks miscarried. And so there's no one way to redo Congress's language to make sense as nouns. I think what that tells us is just adhere to the language Congress used. It used nouns, treated as nouns, and if you treat loss as a noun, there's no reason to give it a different meaning than the way Congress used it as a noun in the Sovereign Immunity Waiver. Finally, just a couple points on my friend's approach to the exception as a whole. This whole separate ambit approach we think is misguided. The way I would think about Congress's thinking when it wrote the provision was it wanted to cover loss or injury to mail. Loss or injury is the wording of the waiver. And so when it got to the exception, loss is a perfectly good word to use when describing something that happens to mail. It thought we can describe injury using even more precise terms because there are words in our lexicon that describe bad things that happen to mail. So it picked up miscarriage and negligent transmission. Does this mean that they could have, after written the three terms, just gone back and erased loss and negligent transmission? I mean, maybe if they were really confident in how courts would interpret the language. But by including loss and miscarriage in addition to—loss and negligent transmission in addition to miscarriage, Congress guarded against three arguments that they were worried might have narrowed the scope of the exception. One is the very argument Respondent is making in this case, that miscarriage should be limited to mail going to the wrong place. Another argument that they wanted to guard against, presumably, is the argument that the Fifth Circuit accepted, which is that miscarriage is limited to instances where there is some preceding carriage or some preceding attempt at carriage. And the third argument they wanted to guard against was the idea that by including miscarriage, the only types of injuries to mail that they were including were intentional ones. And so let's use negligent transmission as well. I think our position gives a coherent reading to the postal exception that avoids the deluge of suits that Congress was trying to avoid by putting the exception in the statute in the first place. And for all those reasons, we'd ask the Court to reverse.